UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| LUIS ANTONIO MARTINEZ,<br><br>        Plaintiff,<br><br>v.<br><br>WASTE PRO USA, INC., and<br>WASTE PRO OF FLORIDA, INC.,<br><br>        Defendants. | CIVIL ACTION NO:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Luis Antonio Martinez, by his attorneys, files this Complaint (hereinafter "Complaint") against Defendants Waste Pro USA, Inc., (hereinafter "Waste Pro USA") and Waste Pro of Florida, Inc., (hereinafter "Waste Pro Florida") (collectively, "Defendants" or "Waste Pro"), seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to others.[1]

## NATURE OF THE ACTION

1. Plaintiff worked for Waste Pro as a Helper[2] who was paid a daily rate or "day rate." Plaintiff also each worked at a location that had a policy or practice to either pay a "half-day rate"[3].

---

[1] Plaintiff was previously an Opt-In Plaintiff in the *Thomas v. Waste Pro USA, Inc., et al.* action, No. 8:17-cv-2254 (M.D. Fla.). That case was proceeding as a collective action and was decertified. Plaintiff is now re-filing his claims through this Complaint with the benefit of tolling of their claims through the *Thomas* action.

[2] Unless otherwise stated, "Helpers" shall be defined as those employed as Helpers and also paid a day rate. A "day rate" is a flat amount of money to perform work on a particular day. Thus, these allegations do not relate to any time period during which Plaintiff were employed as Helpers and not paid a day rate or employed by Defendants in any other position other than Helper.

[3] The "half-day rate" shall be defined as half of the Helpers' day rate.

2. All Helpers were paid overtime wages at a rate of half of their regular rate, rather than at a rate of time-and-a-half their regular rate.

3. Waste Pro USA and Waste Pro Florida jointly and severally violated the FLSA by failing to pay Plaintiff the legally required amount of overtime compensation in an amount required by law for all hours worked over forty in a workweek.  Plaintiff is entitled to unpaid overtime wages for hours worked above forty in a workweek, and to liquidated damages pursuant to the FLSA.

4. By the conduct described in this Complaint, Defendants violated and continue to violate the FLSA by failing to pay Plaintiff proper overtime wages as required by law.

5. Plaintiff brings this action pursuant to the FLSA, and specifically 29 U.S.C. § 216(b), to remedy violations of the overtime wage provisions of the FLSA.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1337.

7. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8. Defendants are subject to personal jurisdiction in Florida.

9. Defendants maintain principal places of business in Florida.

10. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1391.

11. A substantial part of the events or omissions giving rise to claims in this Complaint occurred in this District.

# THE PARTIES

*Plaintiff*

*Plaintiff Luis Antonio Martinez*

12. Plaintiff Luis Antonio Martinez is an adult individual who is a resident of Port St. Lucie, Florida.

13. Plaintiff is a covered employee within the meaning of the FLSA.

14. Plaintiff has been employed by Defendants as a Helper in Florida from approximately July 2014 to July 2016.

15. While Plaintiff was employed by Defendants as a Helper, Plaintiff was classified as non-exempt and, during the time period relevant to this Complaint, was paid a day rate.

16. While Plaintiff was employed by Defendants as a Helper, Plaintiff frequently worked overtime hours. Defendants paid Plaintiff overtime at a rate of half of Plaintiff's regular rate of pay as described below.

17. While Plaintiff was employed by Defendants as a Helper during the time period relevant to this Complaint, Defendants' policy and practice was to pay Plaintiff a half day rate if Plaintiff worked less than four hours on that particular day.

*Defendants*

18. Defendant Waste Pro USA, Inc. is a corporation organized and existing under the laws of the state of Florida. Defendant Waste Pro USA, Inc. is licensed and registered to do business in Florida, with headquarters in Longwood, Florida. Defendant Waste Pro USA, Inc. provides garbage and waste removal services throughout the southeastern United States, including Florida, Mississippi, Tennessee, Louisiana, Arkansas, South Carolina, North Carolina, Alabama and Georgia.

19. Defendant Waste Pro Florida, Inc. is a corporation organized and existing under the laws of the state of Florida. Defendant Waste Pro Florida, Inc. is licensed and registered to do business in Florida, with headquarters in Longwood, Florida. Defendant Waste Pro Florida, Inc. provides garbage and waste removal services throughout the state of Florida.

20. Defendants are integrated enterprises engaged in commerce within the meaning of the FLSA because, among other reasons, they have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have moved in or were produced for commerce by any person, 29 U.S.C. § 203(s)(1).

21. Throughout the relevant period, Defendants have been covered employers as that term is used within the meaning of the FLSA and all other relevant laws.

22. Throughout the relevant period, Defendants' annual gross volume of sales made, or business done was not less than $500,000.

23. At all relevant times, Defendants have employed and/or jointly employed Plaintiff.

24. Waste Pro USA's website advertises that it operates from more than 75 locations across the Southeast. *See* [www.wasteprousa.com/the-waste-pro-way/](www.wasteprousa.com/the-waste-pro-way/) (last visited September 29, 2020).

25. Waste Pro USA's website does not differentiate between different Waste Pro entities but promotes Waste Pro USA's services as one common business purpose across the states in which it does business. *Id.*

26. Defendants do business under the brand, trade name or mark of "Waste Pro."

27. Upon information and belief, Waste Pro Florida is a subsidiary of Waste Pro USA.

28. Upon information and belief, Defendants share the same management and executive offices.

29. Upon information and belief, Defendants administers their human resources functions using the same personnel at their executive offices.

30. Each Defendant employed or acted in the interest of an employer towards Plaintiff and, directly or indirectly, jointly and severally, including without limitation, controlled and directed the terms of employment and compensation of Plaintiff.

31. Upon information and belief, Defendants operate in concern in a common enterprise and through related activities, so that the actions of one may be imputed to the other and/or so they operate as joint employers within the meaning of the FLSA.

32. Defendants each had the power to control the terms and conditions of employment of Plaintiff, including, without limitation, those terms and conditions related to the claims alleged herein.

33. Defendants maintained control and oversight over Plaintiff, including timekeeping, payroll, compensation, overtime pay, and the other employment practices.

34. Upon information and belief, Defendants' business is a centralized, top-down operation controlled by Defendants.

35. All of the work that Plaintiff performed has been assigned by Defendants and/or Defendants have been aware of all of the work that Plaintiff have performed.

## PLAINTIFF'S FACTUAL ALLEGATIONS

36. Plaintiff regularly worked more than 40 hours per workweek for Defendants as a

Helper.

37. Plaintiff was paid bi-weekly.

38. Plaintiff was supposedly paid a "day rate," which was supposed to be a flat rate for a day's work, regardless of the number of hours worked.  However, if Plaintiff worked less than four hours on any particular day, Defendants' policy and practice was to cut Plaintiff's day rate in half and pay Plaintiff a half day rate.

39. When Plaintiff worked less than 4.0 hours on certain days, Defendants paid Plaintiff one-half of his day rate for such days.

40. Defendant Waste Pro USA, Inc.'s Director of Payroll and Systems Automation, Judi Craigo, sent e-mail correspondence setting forth Defendants' day rate policy which demonstrates that the half-day pay practice is tied to the number of hours worked in a day.  Ms. Craigo states that if a day rate employee (like Plaintiff) worked "less than 4.0 hours" then they would receive pay at their half day rate.  In that same e-mail, Ms. Craigo stated that if a day rate employee (like Plaintiff) worked "4 hours or more," then they day would receive pay at their full day rate.

41. Defendants maintained this half day rate pay practice until on or about July 12, 2017.

42. When Plaintiff worked overtime hours, Defendants calculated Plaintiff's regular rates of pay by dividing their total pay for the two-week pay period by the total number of hours worked and Defendants then paid overtime wages at a rate of one-half of their regular rates of pay.

43. The "days" that Plaintiff works are counted by Defendants as shifts.

44. The day rate that Defendants paid Plaintiff appears to be intended to pay Plaintiff

for a normal workday of 8 hours.

45. The "day rate" is cut in half when they work less than 4 hours.

46. A day rate compensation plan requires a flat sum for a day's work without regard to the number of hours worked in the day.  29 C.F.R. §778.112.  Plaintiff was not paid a flat sum for a day's work without regard to the number of hours worked in the day in violation of the day rate provisions of the FLSA.

47. Because Defendants violated 29 C.F.R. §778.112 by not paying Plaintiff a full day rate when they work less than 4.0 hours in a day, Defendants violated the FLSA and must pay overtime wages at time and one-half rate for all overtime hours worked by Plaintiff.

48. The unlawful policies described in this Complaint applied to Plaintiff.

49. The unlawful policies described above include Defendants not paying a true day rate as Defendants required a certain number of hours to be worked on a given day in order to pay the full day's wage and Defendants' payment of only half-time for overtime hours.  These practices violate the FLSA and Plaintiff who was subject to such unlawful practices is owed damages pursuant to the FLSA.

## JOINT EMPLOYER FACTUAL ALLEGATIONS

50. Waste Pro USA is a corporation that provides commercial and residential waste collection services and operates over 75 locations in Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Tennessee, North Carolina, and South Carolina.

51. Waste Pro USA issued a press release on October 24, 2017, in which it acknowledged that it "has revenues projected to exceed $640 million this year, is headquartered in Longwood and its [sic] nine-state footprint includes more than 2 million customers, more than 3,200 employees, and 2,400 collection trucks.  In Florida, Waste Pro has more than 28 operating

locations."

52. Waste Pro USA is the parent company of subsidiaries throughout the southeast, including Waste Pro Florida.

53. Waste Pro USA is the only shareholder of each subsidiary.

54. Subsidiaries of Waste Pro USA list Waste Pro USA's corporate headquarters in Longwood, Florida as their principal place of business.

55. Subsidiaries, such as Waste Pro Florida, do not have a Board of Directors.

56. Subsidiaries such as Waste Pro Florida are also in the business of handling waste and recycling for residential and commercial clients.

57. John Jennings ("Jennings") is the chairman of the board of Waste Pro USA.

58. As of the most recently filed annual reports, John Jennings also serves as the CEO and President of Waste Pro Florida subsidiaries.

59. Waste Pro USA employees are "led by Regional vice presidents and a streamlined corporate staff in Longwood, Florida."

60. The "streamlined corporate staff in Longwood is comprised of a Fleet Manager, Chief Financial Officer, Chief Development Officer, Vice President of Market Development, Chief Marketing Officer, Human Resources Director, and Fred Wood (Senior Vice President).

61. All of these employees report to John Jennings, who directs Waste Pro USA and its subsidiaries, the "largest, full-service, **vertically integrated** waste management companies."

62. The CEO of Waste Pro USA hires Regional Vice Presidents ("RVPs") to oversee certain regions of their operations.

63. The decision to fire an RVP comes from the Waste Pro USA Board of Directors.

64. There are seven RVPs in total -- five in Florida, one in Louisiana, one in

Mississippi, and one in Tennessee.

65. RVPs oversee regions of Waste Pro USA's operations that span across several different subsidiaries.

66. John Jennings recruited Ralph Mills in mid-2006 and hired Mills as Waste Pro Florida's first RVP.

67. Mr. Mills serves (or served) as the RVP of the Coastal Region.

68. The RVPs report to the CEO of Waste Pro USA, John Jennings, who held the CEO title at WP USA from the company's inception in approximately 2001 until approximately 2016 when Tim Herman assumed that role.

69. RVPs represent themselves as employees of Waste Pro USA.

70. Waste Pro USA's CEO corresponds with the RVPs to determine the profitability of each region.

71. The RVPs communicate with John Jennings regularly to discuss business matters, such as potential property acquisitions in their regions.

72. Roughly three times a year, Jennings has a meeting with the RVPs to discuss the status of the regions. Other corporate directors, such as Shannon Early (Waste Pro USA's Vice President of Human Resources), also attend these meetings.

73. Jennings also provides financial support to the regions, such as purchasing all of the waste disposal trucks for the regions, including Waste Pro Florida.

74. Jennings works with investment bankers and investors and acquires money for business needs. In the past, Jennings posted the assets of Waste Pro USA's subsidiaries as collateral to obtain financing for the business.

75. Equipment, such as garbage trucks, containers, carts and bins, are Waste Pro USA's

largest capital expenditures and can cost $10 - $20 million so that the company can be equipped to provide trash removal services.

76. Employees of Defendant Waste Pro USA are also involved in litigation and Department of Labor investigations involving subsidiaries.

77. Waste Pro USA maintains a corporate logo affixed to its garbage trucks of subsidiaries.

78. Once a week, RVPs conduct a conference call to discuss the needs and successes of their regions across Waste Pro USA subsidiaries.

79. Waste Pro USA maintains a company-wide website.

80. Under the website's "Leadership" tab, all upper management post their pictures and titles.

81. John Jennings is identified as the "Chairman & CEO."

82. The RVPs are all listed under Waste Pro USA's Leadership Section.

83. In an email sent from Judi Craigo, Waste Pro USA's Director of Payroll and Human Relations Systems, to Sharon Tolopka, Waste Pro USA's Chief Accounting Officer, Ms. Craigo attached an auditing document that states, in part: "[WP USA] currently employs approximately 2800 people, with approximately 500 salary and 2300 hourly."

84. In Trash Talk, Vol. 2, Iss. 1, a publication issued by Waste Pro USA, Jennings applauds the employees at all subsidiaries for adhering to Waste Pro USA's core values and states that WP USA has instituted a "Leadership Program that will ultimately involve each of you. You should have received a flyer outlining in detail our Core Values... **it is my privilege to lead each and every one of you into the next exciting Waste Pro decade**."

85. Waste Pro USA has admitted in a prior litigation that it was an employer and

employed a Driver which was also paid by the day rate method.

86. Employees' pay changes must come through the Corporate Human Resources department at Waste Pro USA.

87. Waste Pro USA has indicated that no supervisor or member of management, except John Jennings (Waste Pro USA President & CEO), has the authority to bind the company to any employment contract for any specified period of time with any employee, either verbally or in writing.

88. Waste Pro USA handles payment of wages to Helpers.

89. Jennings and Early, Waste Pro USA employees, are involved with bonus decisions for employees at subsidiaries.

90. Waste Pro USA handles the explaining and coordinating of benefits and Waste Pro USA directs Plaintiff to contact Waste Pro USA Human Resources regarding bonuses.

91. Waste Pro USA defines the workweek and pay periods which are the same for Plaintiff.

92. Waste Pro USA prepared a presentation which purports to explain how the day rate practice works.  Waste Pro USA explained the day rate compensation practice using this same presentation at all subsidiaries, including Waste Pro Florida.

93. Early, in her capacity of Director of Human Resources at Waste Pro USA, created an Employee Handbook with the intention that it be applicable to each of Waste Pro USA's subsidiaries.

94. Early and Employment Manager, Erika Boyles, of Waste Pro USA created a common job description for all subsidiaries.

95. WP USA tells its employees, including Plaintiff, when they are hired:

**Welcome to Waste Pro USA!**

Dear Employee:

You and Waste Pro USA have made an important decision: The Company has decided you can contribute to our success, and you've decided that **Waste Pro USA** is the organization where you can pursue your career productively and enjoyably.

96. Waste Pro USA's employee handbook covers all aspects of employment, including, among many others, work rules, compensation and benefits policies, and timekeeping and attendance policies.

97. Waste Pro USA directs Plaintiff in the employee handbook to follow the policies and procedures outlined in this Handbook.

98. Waste Pro USA warns Plaintiff that any violation of these policies and procedures or any other Waste Pro policy, practice or procedure will subject me to disciplinary action, up to and including termination of employment, with or without progressive discipline.

99. Waste Pro USA issues "Absolute Rules" which all employees must follow while performing their work.

100. These corporate policies and procedures are available on the Waste Pro USA intranet and apply to all of its subsidiaries.

101. Waste Pro USA issues many other common policies and procedures that direct how Plaintiff need to perform their work.  For example, the DOT Procedures and Vehicle Operations policy is 217 pages long.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*.**
**On behalf of Plaintiff against Waste Pro USA and Waste Pro Florida, jointly and severally**

102. Plaintiff reasserts and re-alleges the allegations made in all preceding paragraphs herein.

103. Plaintiff is/was an employee of Defendants within the meaning of the FLSA.

104. Defendants jointly employed Plaintiff within the meaning of the FLSA.

105. Plaintiff worked more than 40 hours during his employment with Defendants as Helpers and was not paid overtime wages at time and one-half of his regular rates of pay in violation of the FLSA.

106. Defendants, in failing to pay Plaintiff time and a half overtime premium pay when they work more than forty hours per week, have violated the FLSA.

107. While dividing total pay by total hours worked, whatever their number, may be permissible for true "day rate" employees, Defendants do not pay a true "day rate." Defendants do not pay a "flat sum for a day's work or for doing a particular job, *without regard to the number of hours worked in the day or at the job*…" 29 C.F.R. § 778.112. (emphasis added). Instead, Defendants pay one-half of their alleged "day rate" when Plaintiff worked less than 4.0 hours in a day. Accordingly, Defendants should have divided Plaintiff's total pay by forty (40) hours to determine the regular rates of pay and paid for all overtime hours worked at time and a half of the regular rate of pay.

108. 29 C.F.R. § 778.112 provides as follows:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, *and if he receives no other form of compensation for services,* his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek.

*Id.* (emphasis added).

109. Defendants have also violated by the FLSA by paying an ostensible "day rate" and a half-time premium.

110. Defendants' failure to pay a time and a half overtime premium has been willful in

that they knew that they were not paying a true and proper "day rate" as defined by 29 C.F.R. § 778.112 and yet used the half-time rate of overtime calculation nonetheless.

111.  As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages and are entitled to recovery of such damages, liquidated damages, attorneys' fees, costs.

112.  Plaintiff jointly, severally, or in the alternative assert a right to relief under the FLSA with respect to or arising out of the Defendants' pay practices.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

    A.    Unpaid overtime under the FLSA;

    B.    Liquidated damages permitted under the FLSA;

    C.    Attorneys' fees and costs of suit, including expert fees; and

    D.    Such other relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  October 2, 2020
      Boca Raton, Florida

Respectfully submitted,

By:*/s/ Gregg I Shavitz*
Gregg I. Shavitz
Logan A. Pardell
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
Tel: (561) 447-8888
Fax: (561) 447-8831
gshavitz@shavitzlaw.com
lpardell@shavitzlaw.com

Michael J. Palitz*

        SHAVITZ LAW GROUP, P.A.
        800 Third Avenue, Suite 2800
        New York, New York 10022
        Tel:  (800) 616-4000
        mpalitz@shavitzlaw.com

        Nicholas A. Migliaccio*
        Jason S. Rathod*
        Erick Quezada*
        MIGLIACCIO & RATHOD LLP
        412 H St., NE
        Suite 302
        Washington, DC 20002
        Tel:  (202) 470-3520
        Fax:  (202) 800-2730
        nmigliaccio@classlawdc.com
        jrathod@classlawdc.com

        D. Aaron Rihn*
        ROBERT PEIRCE & ASSOCIATES, P.C.
        2500 Gulf Tower
        707 Grant Street
        Pittsburgh, PA 15219-1918
        Tel:  412-281-7229
        arihn@peircelaw.com

        *Attorneys for Plaintiff*

*\* application for admission pro hac vice forthcoming*